808 A.2d 114 (2002)
354 N.J. Super. 442
Ptl. Christopher MONEK, Plaintiff-Respondent/Cross-Appellant,
v.
BOROUGH OF SOUTH RIVER, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2002.
Decided October 21, 2002.
*115 Richard H. Bauch, Morristown, argued the cause for appellant/cross-respondent (Schenck, Price, Smith & King, attorneys; Mr. Bauch, of counsel and on the brief, and Damian L. Albergo, on the brief).
Joseph J. Benedict, New Brunswick, argued the cause for respondent/cross-appellant (Benedict & Altman, attorneys; Mr. Benedict and Doris E. McNeil, on the brief).
Before Judges SKILLMAN, CUFF and LEFELT.
The opinion of the court was delivered by *116 LEFELT, J.A.D.
A Middlesex County trial judge ordered defendant Borough of South River to reimburse plaintiff Patrolman Christopher Monek for his attorneys' fees and costs incurred in defending official misconduct, aggravated assault and witness tampering criminal charges. South River appeals, contending Monek's complaint in lieu of prerogative writs was untimely under R. 4:69-6(a), and that reimbursement was precluded by N.J.S.A. 40A:14-155, because Monek's conduct did not arise out of and directly relate to the lawful exercise of police powers in furtherance of his official duties. We conclude that the trial court properly considered Monek's complaint, but find that the fees and costs associated with the witness tampering charge were not reimbursable. Accordingly, we remand to the trial court to eliminate from the reimbursable fees and costs those associated with the witness tampering charge.

I.

The Underlying Incident
On August 3, 1997, Monek and officer-in-training Richard Benedict responded to Gary Brown's residence to deal with Brown's threat to kill his brother. Monek was senior officer on the dispatch and also had been temporarily assigned as Benedict's training officer at the time of the dispatch. The officers had some difficulty gaining access to the residence, but eventually Brown was arrested and taken to headquarters.
While Brown was quite drunk and uncooperative, he was finally booked, searched thoroughly and placed in a holding cell. Brown continued "to holler and scream and ... bang on the cell doors." Monek and Benedict went to the cell to try and quiet Brown.
According to Monek, Brown hit his head on the cell bars while thrashing around before Monek entered the cell. Benedict did not see Brown hit his head. He saw Monek attempt to grab Brown and wrestle him onto a cot. At that point, Benedict saw that Brown had "like a trickle on the side, like a little thing of blood coming down the side of his head." The officers bandaged Brown with some gauze.
Later, Monek told Benedict what happened so that Benedict could prepare the police report. Monek said: "Brown was thrashing around in the cell, we went in there to calm him down, and he had an injury and stuff and we treated it." Monek also told Benedict that he saw Brown hurt himself. Benedict wrote his report recounting the incident as described by Monek and stated that both he and Monek had seen Brown strike his head on the bars.
According to Brown, he was placed in a cell, not told what the charges were, and not given access to a phone. He admitted being "pretty loud about getting a phone call." That's when Monek came into the cell and "pushed up against [him] with his chest, pushing [him] back. And then [Monek]... hit [him] in the eye .... then [he] got hit in theright up in the forehead and knocked ... out." Brown then remembers "[w]aking up in a pool of blood."

II.

The Subsequent Proceedings
Three weeks later, Lt. Kolakowski, an Internal Affairs Officer, began an investigation of the incident. When Benedict, concerned about the investigation, asked Monek what he should say, Monek told him to "just stick to the report, keep it simple, and it won't be a problem."
On November 5, 1997, the State charged Monek with second-degree official misconduct *117 for committing aggravated assault, N.J.S.A. 2C:30-2; second-degree aggravated assault, N.J.S.A. 2C:12-1(b); and third-degree witness tampering for attempting "to induce or otherwise cause [Patrolman] Richard Benedict to testify or inform falsely," N.J.S.A. 2C:28-5(a).
On November 13, 1997, Lt. Kolakowski charged Monek with ten violations of the South River Police Department Rules and Regulations. The discipline hearing was held in abeyance pending disposition of the criminal charges.
In early 1998, the criminal charges were presented to the Middlesex County Grand Jury. On February 4, 1998, the Grand Jury downgraded the official misconduct to simple assault under N.J.S.A. 2C:12-1(a); the aggravated assault to improper behavior, disorderly conduct, under N.J.S.A. 2C:33-2(a)(1); and no billed the witness tampering charge.
The two downgraded charges were heard in the Sayreville Municipal Court and after hearing the State's case, the municipal court judge granted a defense motion for acquittal and dismissed both charges. Shortly thereafter, on November 13, 1998, Monek's attorneys sent their first bill to South River seeking reimbursement for their fees and costs.
Monek then waived his right to a departmental hearing on the disciplinary charges and filed a notice of appeal in Superior Court. Judge Phillip Paley eventually heard the disciplinary charges and merged or dismissed six of the charges against Monek. But, on July 28, 1999, Judge Paley found Monek guilty of failing to conduct himself in accordance with high ethical standards; knowingly and willfully causing a false police report to be made; issuing an order to a subordinate while knowing such order to be unlawful; and failing to give a truthful statement when being questioned in regard to an internal investigation. Judge Paley penalized Monek with an aggregated thirty-day suspension, and Monek took no appeal from the findings of guilt on the disciplinary charges or penalties.
Shortly before the disciplinary proceedings began, but after the dismissal of all criminal charges, Monek's attorneys continued their efforts to obtain reimbursement under N.J.S.A. 40A:14-155 for their successful defense of the criminal charges. Monek's attorneys continued to pursue South River regarding fee reimbursement after Judge Paley's decision. Borough counsel sought to have Monek and his attorneys compromise their claim against the Borough. The Borough counsel also represented that a proposed settlement would be discussed with the governing body, but that it would be November 1999, before any answer could be furnished.
On October 19, 1999, Monek forwarded to the Borough a draft complaint seeking reimbursement. In November 1999, Monek's counsel contacted the Borough counsel regarding the complaint and attorney fees and was advised that the Borough intended to seek labor counsel advice. In December 1999, the Borough counsel disclosed that the town had not yet received labor counsel advice and a new labor counsel was being hired who was not yet familiar with the matter.
Finally, after not hearing from Borough counsel, Monek, on January 14, 2000, filed the previously drafted complaint in lieu of prerogative writs. After briefing and oral argument, the trial court on January 12, 2001 ruled that South River must reimburse Monek's attorneys for the full amount of their fees and costs, $42,901.25.
The judge found the complaint timely filed because South River had created a "period of delay" and never "directly denied" the demand for payment. The trial *118 court also concluded that Monek was acting in furtherance of his lawful police functions despite Judge Paley's findings. The judge found that Monek "was engaged in an activity arising out of and directly related to the lawful exercise of his police power (i.e. the training [of officer] Benedict) in furtherance of his official duties (he was required to respond to inquiry by his trainee)." The judge found that Monek's direction to Benedict regarding the internal investigation "was directly in the line of duty even if the direction was ill advised or was in an effort to protect his subordinate from criticism or suspension."

III.

Timeliness of the complaint
We first address the timeliness of Monek's complaint in lieu of prerogative writs. R. 4:69-6(a) requires the complaint to be filed within "45 days after the accrual of the right to review, hearing or relief claimed." The trial judge found the complaint timely because "no definitive official action was taken by the Borough to trigger the running of the period of limitation." We need not determine whether a formal denial of a fee request is required before accrual of the right to reimbursement under N.J.S.A. 40A:14-155.
The pertinent prerogative writs rule also states that a "court may enlarge the period of time provided in paragraph (a) ... where it is manifest that the interest of justice so requires." R. 4:69-6(c). Here, plaintiff did not slumber on his rights, but instead made regular attempts to obtain reimbursement. The trial court noted that "numerous contacts [were made] between counsel for plaintiff and the Borough in December 1997, January 1998, August 1998, August 1999, October 1999 and at other times seeking clarification of the Borough's position concerning payment." During this entire period the Borough knew Monek was seeking reimbursement and was not surprised or prejudiced by the filing of his complaint.
In addition, the question to be addressed involves not only Monek's private interests, but also an issue of some public importance, i.e. when the public may properly be called upon to reimburse a police officer for attorney fees incurred in defense of criminal charges brought against the officer. See Pressler, Current N.J. Court Rules, comment 7 on R. 4:69-6(c) (2002) (noting that enlargement is appropriate where the case presents "an important public rather than a private interest which requires adjudication or clarification.").
In the matter at hand, we conclude that the period of ongoing negotiations between plaintiff and municipal counsel provides a proper basis to extend the forty-five day time limit. Accordingly, we find that in the interests of justice the matter was properly heard by the trial court.

IV.

Reimbursement for assault charges
We proceed to address the merits of plaintiff's reimbursement claim. While the township's brief seemed directed solely at attorney fees relating to the witness tampering charge, at oral argument South River clarified that it believed Monek's conduct tainted all of the fees and therefore none of the fees and costs expended should be reimbursed. We reject the breadth of this argument, and conclude that reimbursement should occur for the fees relating to defense of the assault charges.
N.J.S.A. 40:14-155 states in pertinent part that police officers may be reimbursed for the expense of their defenses when the officer "is a defendant in any *119 action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties." The statute further requires that to be reimbursed for the defense expenses, the criminal proceeding must "be dismissed or finally determined in favor of the ... officer."
Regarding the dismissal of the two criminal charges relating to the assault of Brown, there is no evidence that Monek's conduct in attempting to pacify Brown did not arise out of and directly relate to the lawful exercise of police powers. Monek was acquitted of assaulting Brown and Judge Paley dismissed the disciplinary charge against Monek for "unjustifiable force against a person under arrest."
We have not been supplied with a transcript of Judge Paley's findings and, therefore, we cannot be completely certain. But, from the array of charges and their dispositions, it appears that all of the guilty discipline charges are related to Monek's subsequent actions taken after the alleged assault and during the internal investigation. Accordingly, we discern no reason to withhold reimbursement for defense expenses relating to the assault charges.

V.

The Witness Tampering Charge
The witness tampering charge, however, relates to Monek's advice to Benedict regarding preparation of the police report and testimony before the internal investigator. The trial court found the fees associated with defending this charge reimbursable because Monek was "training" officer Benedict and "he was required to respond to inquiry by his trainee."
In Gordon v. Borough of Middlesex, 268 N.J.Super. 177, 182, 632 A.2d 1276 (App. Div.1993), we noted that N.J.S.A. 40A:14-155 was amended in 1986. (L. 1985, c. 457 § 1). Before that amendment, the statute permitted reimbursement of police officers for any legal proceeding "arising out of or incidental to the performance of his duties." The 1986 amendment removed this language and replaced it with the language we confront in the present case, "arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties."
The amendment, which greatly restricted the circumstances under which officers may have a defense provided and be reimbursed for attorney fees, was adopted in direct response to our Supreme Court's interpretation of the former statutory language which permitted a defense and reimbursement whenever "the charges are the kind to which police are exposed because of their occupationwhether because of the performance of their duties or simply because of being a police officer." Moya v. New Brunswick, 90 N.J. 491, 493, 448 A.2d 999 (1982) (officer was charged with breaking and entering retail establishments while off duty); see also Valerius v. Newark, 84 N.J. 591, 423 A.2d 988 (1980) (officer charged with misconduct in office, conspiracy to take money under false pretenses and taking money under false pretenses). As we pointed out in Gordon, "[t]he `status rule' enunciated in Moya was specifically rejected by the 1986 amendment to N.J.S.A. 40A:14-155." 268 N.J.Super. at 183, 632 A.2d 1276. The legislative goal of the 1986 amendment was to deny reimbursement "when the officer's infraction or criminal act is a `perversion' of, rather than in furtherance of his official duties." Gabbianelli v. Township of Monroe, 271 N.J.Super. 544, 549, 638 A.2d 1377 (App.Div.1994) (quoting Bruno v. Atlantic City, 239 N.J.Super. 469, 473, 571 A.2d 1003 (App.Div.), certif. denied, 122 N.J. 165, 584 A.2d 231 (1990)).
*120 Under the current statute, "acquittal alone is not sufficient to require reimbursement." 268 N.J.Super. at 185, 632 A.2d 1276. An officer "must prove that he or she was engaged in activity `directly related to the lawful exercise of police powers in the furtherance of his [or her] official duties,' when the conduct giving rise to the charges took place." Id. at 185-86, 632 A.2d 1276. Reimbursement is not required solely because the alleged criminal act occurs while the officer is on duty. Bruno, supra, 239 N.J.Super. at 473, 571 A.2d 1003.
In the instant case, while the internal affairs investigation was ongoing, Monek must have been aware that he was the subject of the investigation. Monek should have known that Benedict wrote the report to reflect that both Benedict and Monek had seen Brown strike his head against the bars. Monek should also have known from discussions with Benedict and from what actually occurred that that part of the report was not true.
Monek testified before the Grand Jury that after he entered the cell and saw Brown shaking the bars, he then noticed a small abrasion on his head. After the struggle he had with Brown, he noticed blood coming from Brown's left eye. Monek then explained that his partner, Benedict, was behind him at the time and had never entered the actual cellblock or the cell itself.
Moreover, Monek indicated that because he saw the cut over Brown's left eye, he "assumed" Brown got the cut by striking his head on the bars. Although Monek never actually saw Brown's head strike the bars, Benedict testified that when he was preparing the report, Monek told him "okay, this is the way it happened, Brown was thrashing around in the cell, we went in there to calm him down, and he had an injury and stuff and we treated it." As to how Brown got the injury, Monek told Benedict that he had seen, not just assumed, Brown "bang[ed] his head or something."
Thus, when Monek told Benedict to stick to the report when testifying before the internal investigator, Monek knew he was telling Benedict to stick to a story that was not true. This is not "the lawful exercise of police powers" or in "furtherance of his official duties."
In addition, we conclude that collateral estoppel precluded Monek from claiming otherwise in the prerogative writs action. Judge Paley found Monek guilty of causing a false police report regarding the incident, giving a subordinate an unlawful order to testify by "sticking" to a false report and failing to give a truthful statement to the internal investigator.
"`The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action.'" Figueroa v. Hartford Ins. Co., 241 N.J.Super. 578, 584, 575 A.2d 888 (App.Div.1990) (quoting New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J.Super. 293, 297-98, 391 A.2d 923 (App.Div.1978)). As contrasted with res judicata, which requires an identity of the cause of action, collateral estoppel bars relitigation of the same issues in suits that arise from different causes of action. Selective Ins. Co. v. McAllister, 327 N.J.Super. 168, 173, 742 A.2d 1007 (App.Div.2000).
For collateral estoppel to apply, the party asserting the bar must show that: (1) the particular issue to be precluded is identical to the issue decided in the previous proceeding; (2) the issue was actually litigated in the prior action, i.e., there was a full and fair opportunity to litigate the *121 issue in the prior action; (3) a final judgment on the merits was issued in the prior proceeding; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom preclusion is asserted was a party to or in privity with a party to the earlier proceeding. In re Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994).
The issue to be precluded by the doctrine can be either a factual or legal issue. State v. Gonzalez, 273 N.J.Super. 239, 242, 641 A.2d 1060 (App.Div.1994). And, in Pivnick v. Beck, 326 N.J.Super. 474, 485, 741 A.2d 655 (App.Div.1999), we pointed out that the doctrine "`must be applied equitably, not mechanically.'" (quoting In re Tanelli, 194 N.J.Super. 492, 497, 477 A.2d 394 (App.Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984)).
The trial judge noted that Judge Paley did not have to decide explicitly whether Monek tampered with a witness, which was undoubtedly true, but that does not preclude applying collateral estoppel. The doctrine bars issues from being relitigated in a second proceeding. The two relevant proceedings here are the discipline proceeding before Judge Paley and the in lieu of prerogative writs fee reimbursement action.
One of the issues Judge Paley litigated was whether Monek issued an unlawful order to Benedict. Considering the facts of this episode, the unlawful order can only relate either to instructing Benedict to file a false police report or to testify falsely before the investigator. Without the transcript of the proceeding before Judge Paley, we cannot determine whether the judge's guilty determination was based on the police report, the testimony or both.
In any event, the broad issue presented by the reimbursement statute was whether Monek's actions were "directly related to the lawful exercise of police powers in the furtherance of his official duties." Considering the specific facts of this case, the issue is more appropriately stated as whether Monek's direction to Benedict regarding the police report and the internal affairs testimony was lawful and in furtherance of his official duties. If Monek's instruction was unlawful it was not in furtherance of official duties and reimbursement must be denied. This was one of the precise issues Judge Paley adjudicated. Therefore, the issues in both proceedings relating to the criminal charge of witness tampering were identical.
Once the issues are clarified, we can see that all of the elements of the collateral estoppel doctrine are met. There is no question that Judge Paley actually adjudicated the lawful order issue and rendered a final judgment on the merits. Because there was a specific disciplinary charge leveled, the determination of this issue by Judge Paley was essential to his judgment. Finally, Monek was the defendant in Judge Paley's action and the plaintiff in this action. Thus, the party against whom collateral estoppel is being asserted was a party in the prior proceeding and had an adequate opportunity to litigate the issue. Given the public's interest in not paying for a police officer's defense when the officer acted unlawfully, we see no equitable reason not to apply collateral estoppel.
Therefore, Monek was estopped from claiming in the fee reimbursement action that his dealings with Benedict were lawful and in furtherance of his official duties. Because these unlawful actions relate solely to the witness tampering charge, Monek may not be reimbursed by South River for any attorney charges or fees related to this aspect of his defense.

VI.

The cross-appeal
Plaintiff has filed a cross-appeal, challenging the trial judge's rejection of *122 pre-judgment interest as well as counsel fees and costs associated with the prerogative writs action. Neither of these issues were argued before the trial court.
Regarding attorney fees, the judge awarded Monek costs associated with the in lieu of prerogative writs proceeding, but Monek's attorneys' bill for "professional services rendered," did not account for any fees incurred during the prerogative writs proceeding. Even assuming that plaintiff had a colorable claim for attorney fees, the trial court did not consider either the awardability or reasonableness of these fees. See Rivkin v. Dover Tp. Rent Leveling Bd., 143 N.J. 352, 378-80, 671 A.2d 567, cert. denied, 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996) (noting without deciding that though attorney fee reimbursement is not normally available in actions in lieu of prerogative writs, the frivolous litigation statute, N.J.S.A. 2A:15-59.1, might in some cases be applicable).
In addition, plaintiff failed to present properly to the trial judge any request for pre-judgment interest. It is insufficient simply to place a provision seeking pre-judgment interest in a submitted order.
Normally, we decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available, "`unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Brown v. Township of Old Bridge, 319 N.J.Super. 476, 501, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999) (quoting Skripek v. Bergamo, 200 N.J.Super. 620, 629, 491 A.2d 1336 (App.Div.), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985)). Neither the attorney fee nor the pre-judgment interest issues as presented in this case involve jurisdiction or "sufficient public concern" for us to consider the matters without a proper record developed in the trial court. Alan J. Cornblatt P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998). Accordingly, we reject plaintiff's cross-appeal.

VII.

Conclusion
In conclusion, we affirm that portion of the trial judge's judgment that ordered reimbursement of fees and costs expended in defense of the assault charges. We reverse the portion of the trial court's judgment ordering reimbursement of fees and costs associated with the witness tampering defense and remand to the trial court. On remand, the court shall subtract from Monek's attorneys' bills those expenses and costs that relate to the witness tampering defense. Because the jury no billed the witness tampering charge on February 4, 1998, none of the charges for legal services rendered after that date would be related to the witness tampering defense. Thus, in determining which fees and costs are reimbursable, the court should direct its scrutiny to the services and costs incurred before February 4, 1998. We leave to the court's discretion how best to accomplish subtraction of the non-reimbursable fees and costs. We dismiss the cross-appeal because the issues raised therein were not properly presented to the trial court.