NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A- 0557-22

STEVEN BREITMAN,

     Plaintiff-Respondent,

v.

ATLANTIS YACHT CLUB,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 27, 2023

APPELLATE DIVISION

Argued October 10, 2023 – Decided October 27, 2023

Before Judges Sabatino, Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3219-21.

Sherry L. Foley argued the cause for appellant (Beinhaker & Beinhaker, LLC, and Foley & Foley, attorneys; Joshua Beinhaker, of counsel and on the briefs).

James A. Raborn argued the cause for respondent.

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Plaintiff Steven Breitman paid $7,500 to become a member of defendant Atlantis Yacht Club ("the Club"), a nonprofit organization formed under

N.J.S.A. 15A-2.1. His membership payment was memorialized in what is termed a Certificate of Interest ("COI"). In 2015, plaintiff informed the Club he was withdrawing as a member. Pursuant to the Club's by-laws that had been in existence for many years, upon his withdrawal plaintiff would be eligible to receive a repayment from the Club to "redeem" his COI at such time when a new member joined.

By the time plaintiff withdrew in 2015, the Club had raised its membership fee to $25,000. Under the extant by-law, the Club was authorized to pay plaintiff (subject to adjustments for any unpaid late fees or charges) the amount of the new member's fee, minus a $5,000 capital assessment, for a net sum of $20,000. When a new member eventually joined in 2020, the Club notified plaintiff that it would pay him the $20,000 redemption amount in installments over three years. The Club accordingly paid plaintiff a first installment in 2020 of $3,333.33, informing him that his second- and third-year annual payments in 2021 and 2022 would each be $8,333.33.

Before the second-year installment to plaintiff was due in July 2021, the Club had what is described as a "compliance review" conducted by a law firm. Although no opinion letter from the law firm is in the record, the firm reportedly advised the Club that making such a redemption payment to withdrawing members at a higher amount than their original membership fee

2

would risk the Club's nonprofit status. As described in a June 14, 2021 letter to members from the Club's board of governors, such a gain would not be "in compliance with [unspecified] NJ law and [unspecified] IRS regulations." The letter further noted that "no departing R-member[1] may make a profit from the redemption of a COI." That advice prompted the Club to rescind its scheduled second- and third-year payments to plaintiff.

Plaintiff sued the Club to enforce its promise to pay him the additional installments. After hearing the matter, the Law Division judge ruled in plaintiff's favor, and denied reconsideration. The Club now appeals.

The novel legal question presented here is whether the payment arrangement was, as the Club contends, "an illegal contract" because it would entail the "distribution" to a member of "income or profit" disallowed for nonprofit corporations under N.J.S.A. 15A:2-1.[2]

For the reasons that follow, we affirm the trial court's ruling that the repayment arrangement was not an illegal or unenforceable contract, and its decision compelling the Club to make the promised installments.

---

[1] An "R-member" is shorthand for a Regular member of the Club who has purchased a COI.

[2] We note that the Office of the Attorney General, which represents the Division of Taxation, among other client agencies, declined our invitation to participate in this appeal involving the interpretation of the New Jersey nonprofit statutes.

The pertinent statute, the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to 14-26 ("the Act"), was enacted in 1983. In adopting the Act, the Legislature instructed that "[t]his title shall be liberally construed and applied to promote its underlying purposes and policies." N.J.S.A. 15A:1-1(b). These statutory purposes include, among others, (1) "to simplify, clarify and modernize the law governing nonprofit corporations;" (2) "to provide a general corporate form for the conduct of lawful nonprofit activities[,]" and (3) "to make the law governing nonprofit corporations as nearly compatible with the New Jersey Business Corporation Act (N.J.S.A. 14A:1-1 [to :18-11]) as may be practicable." N.J.S.A. 15A:1-1(c). The statute covers nonprofit organizations in New Jersey formed before and after its enactment, including the Club, which was formed in 1961.[3]

Section 2-1(a) of the statute provides that "[a] corporation may be organized under this act for <u>any lawful purpose other than for pecuniary profit</u> including . . . social [and] fraternal . . . purposes." N.J.S.A. 15A:2-1(a)

---

[3] The Senate Judiciary Committee Statement concerning the Act states that: "[A]lthough corporations in existence prior to the effective date of the new act will be governed by its terms, the new act will not divest existing corporations of any rights or privileges and will not require the corporation to do anything except in limited circumstances." <u>S. Judiciary Comm. Statement to A. 366</u>, at 2–3 (Dec. 13, 1982).

(emphasis added).  It is undisputed by the parties that the Club was formed for a lawful purpose that is "other than for pecuniary profit."

The Club was not created with the purpose of being a money-making enterprise.  As stated in its by-laws, the "object" of the Club "is to encourage the sport of boating, to advance the science of seamanship and navigation, to promote good fellowship and to facilitate the exchange of ideas among its members and to provide a suitable clubhouse, dock and other facilities for the recreational use of its members."

The critical provision within the Act at issue here is subsection (d) of section 2-1, which reads in full:

> (d) No corporation organized under this act shall have or issue capital stock or shares.  No dividend shall be paid and no part of the income or profit of a corporation organized under this act shall be distributed to its members, trustees or officers, but a corporation may pay compensation in a reasonable amount to its members, trustees and officers, for services rendered, may pay interest on loans or other credit advances by members, trustees and officers, may confer benefits on its members in conformity with its purposes, and upon dissolution, may make distributions to its members as permitted by this act; except the payment, benefit, or distribution shall not be deemed to be a dividend or distribution of income or profit.
>
> [N.J.S.A. 15A:2-1(d) (emphasis added).]

A- 0557-22

Subsection (d) was "based on § 26 of the Model Nonprofit Corporation Act[4] and is consistent with [repealed] R.S. 15:1-1 and R.S. 15:1-22." N.J.S.A. 15A:2-1, Nonprofit L. Rev. Comm. note.

The Act does not define the terms "capital stock," "shares," "dividend," "income," or "profit" as they are used within N.J.S.A. 15A:2-1(d). As clarified by its arguments on appeal, the Club does not contend that plaintiff would be receiving a "dividend" in exchange for his redeemed COI. Nor does the Club argue its members literally hold "capital stock" or "shares" of stock in the organization, although it likens the COIs to such instruments.

The heart of the Club's statutory argument focuses on subsection (d)'s directive that, except for services provided by a member, "no part of the income or profit of a corporation organized under this act shall be distributed to its members." The Club maintains that when a COI is redeemed for a higher amount than the amount the withdrawing member originally paid for the COI, that redemption is "income or profit" being "distributed" from the Club to a member.

---

[4] The provision differs from the relevant Model Act only by removing the words "or final liquidation" after "upon dissolution." Model Nonprofit Corp. Act § 26 Joint Comm. on Continuing Legal Educ. of the Am. L. Inst. & Am. Bar. Ass'n (1964 Rev.).

A- 0557-22

Plaintiff, meanwhile, contends that the gain in the value of his COI is neither income nor profit of the corporation, and thus the prohibition within N.J.S.A. 15A:2-1(d) does not apply. Alternatively, plaintiff argues that even if the redemption were deemed to be such a distribution to him, the transaction would only potentially affect the Club's nonprofit status, not his own rights. He submits a loss of nonprofit status would not make the Club's agreement to pay him $20,000 for his COI an illegal contract.

Plaintiff also points out that the Club has a long history of making such redemptions to withdrawing members at sums above their original payment price under the by-laws before they were unilaterally revised by the Club in 2021 to disallow such gains.[5] The Club does not dispute that past practice, but argues that it must be discontinued because of the legal advice it received concerning the putative illegality of such payments.

---

[5] In the proceedings before the trial court, the Club disavowed any reliance on its by-laws, and limited its argument to its contentions of illegality under N.J.S.A. 15A:2-1(d). Consequently, we will not address the Club's argument in Point II of its appellate brief concerning whether its by-laws, either as they existed before 2021 or thereafter, independently allow the Club to rescind its contractual obligations to plaintiff. See Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973) (instructing that appellate courts ordinarily should not reach issues that were not argued below, unless they significantly affect the public interest); see also Monek v. Borough of S. River, 354 N.J. Super. 442, 456 (App. Div. 2002).

A- 0557-22

In considering these legal issues, we apply well-established principles of statutory interpretation. To understand the meaning of a statute, the appellate court will "look for the Legislature's intent." Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 54 (2022) (citing DiProspero v. Penn, 183 N.J. 477, 492–93 (2005)). A court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (quoting DiProspero, 183 N.J. at 492).

If the text of a statute is not clear on its face, courts may look to extrinsic aids to interpret it, including but not limited to the enactment's legislative history and the policies underlying it. State v. Harper, 229 N.J. 228, 237 (2017); DiProspero, 183 N.J. at 494 (examining an ambiguous statute's legislative history and "the policy considerations undergirding the legislation"). Such extrinsic aids may also include definitions of the same words that appear in other statutes or legal authorities, or dictionaries. See, e.g., Malanga v. Twp. of W. Orange, 253 N.J. 291, 315–16 (2023) (consulting dictionary definitions as extrinsic aids in interpreting a statute).

In addition, a court must follow the "bedrock assumption that the Legislature did not use 'any unnecessary or meaningless language.'" Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013)

A- 0557-22

(quoting Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418–19 (2009)). The court "should try to give effect to every word." Ibid. (quoting Med. Soc'y of N.J. v. N.J. Dep't of L. & Pub. Safety, 120 N.J. 18, 26–27 (1990)).

Because statutory interpretation is a matter of law, we review trial courts' interpretations of statutes de novo on appeal. State v. Gomes, 253 N.J. 6, 16 (2023). Applying that de novo standard here, we concur with the trial court's decision finding the redemption of plaintiff's COI—at the mutually assented terms—did not comprise an illegal agreement under N.J.S.A. 15A:2-1(d).

The focal point of statutory analysis here is the six words "income or profit of the corporation" within subsection (d). The concept of income is commonly understood to mean "[t]he money or other form of payment that one receives— usu[ally] periodically, from employment, business, investments, royalties, gifts and the like." Income, Black's Law Dictionary 912 (11th ed. 2019). The New Jersey tax statutes similarly define "entire net income" to entail "total net income from all sources . . . and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets." N.J.S.A. 54:10A-4(k) (emphasis added).

A- 0557-22

The term "profit" also has a commonly used meaning. Black's Law Dictionary defines the term as "[t]he excess of revenues over expenditures in a business transaction." Profit, Black's Law Dictionary 1465 (emphasis added). Further, the United States Supreme Court in United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852 (1975), has described "profits" as the "capital appreciation resulting from the development of the initial investment . . . [where] the investor is 'attracted solely by the prospects of a return.'" Ibid. (quoting SEC v. W.J. Howey Co., 328 U.S. 293, 300 (1946)).

In this case, as set forth in the by-laws, the funds paid by plaintiff and other new Club members for their COIs "shall constitute collateral for . . . unpaid dues, dockage, assessment or interest."[6] "Collateral" is commonly understood to mean "[p]roperty that is pledged as security against a debt." Collateral, Black's Law Dictionary 328; see also N.J.S.A. 12A:9-102(a)(12) (defining collateral as "the property subject to a security interest or agricultural lien").

Additionally, the by-laws state that "in the event of redemption all outstanding sums due to [the Club] shall be deducted from said redemption."

---

[6] Plaintiff separately remitted unpaid electric charges and other past due sums he owed the Club upon his resignation, so no such deduction from his COI redemption was necessary.

The COI is non-negotiable. The COI is not designated as a share of corporate stock or a security.

Here, plaintiff and fellow members surely did not join the Club because they were "attracted solely by the prospects of a return" on their COIs. United Hous. Found. Inc., 421 U.S. at 852. Instead, they became members to take advantage of the boating services offered by the Club and their fellowship with other members.

Guided by these definitions and concepts, we agree with the trial court that the redemption of plaintiff's COI, although it was for a higher amount than the sum plaintiff originally paid when he joined, was neither "income" nor "profit" "of the corporation."

The Club was not utilizing the COIs as income-generating or profit-making instruments. The Club has not presented books or other financial records that classify the monies paid by members for their COIs as the organization's income or profit. As noted above, the Club holds those funds as "collateral" to be available in the future, in the event they are needed to satisfy "unpaid dues, dockage, assessment or interest."[7]

---

[7] Notably, a number of similarly organized social clubs have written to the United States Securities and Exchange Commission ("SEC") requesting and receiving No-Action Letters ("NALs") regarding their memberships under § 2(a)(1) of the Securities Act of 1933. The SEC has declined to recommend

Although we have been presented with no evidence as to whether the Club keeps COI funds in segregated accounts, the funds are restricted for these limited purposes. And, when a member resigns and a new member joins, the Club can expect to be asked to repay the withdrawing member a prescribed amount upon redemption of the COI. In essence, the Club functions as an intermediary or pass-through, subject to the $5,000 capital assessment.

Therefore, a plain and sensible reading of the statute supports the trial court's oral ruling that "enforcing the contract between the parties does not violate N.J.S.A. 15A:2-1(d)." The Club's agreement to pay plaintiff the additional two scheduled installments for his COI is not void, as it is not "technically defective, contrary to public policy, or illegal." Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 73 (App. Div. 2022) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 194 n.4 (2013)). And, as the trial court rightly found, there was an enforceable agreement created here that the Club breached by rescinding the second- and third-year installment payments

---

enforcement of the federal securities laws for not registering such memberships as securities, based on the facts the requestors presented, although its NALs do not constitute dispositive legal conclusions. See, e.g, Response of the Off. of Chief Couns., Div. Of Corp. Fin., U.S. Sec. & Exch. Comm'n, https://www.sec.gov/divisions/corpfin/cf-noaction/2012/coralbeach tennisclub012512-2a1.htm (last visited Sep. 20, 2023). We refer to these sources purely as illustrative examples and not as precedential. See R. 1:36-3.

A- 0557-22

to plaintiff. <u>Goldfarb v. Solimine</u>, 245 N.J. 326, 338–39 (2021) (delineating the traditional elements of an enforceable contract).

Based on the above analysis, we need not reach plaintiff's alternative argument that any hypothetical invalidation of the Club's non-profit tax status would not void the parties' agreement with one another to redeem his COI for the scheduled amounts.[8]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] Since it was not litigated in this case, we do not address whether the financial gain plaintiff obtains from the redemption installments would be taxable income to him.