810 A.2d 1130 (2002)
355 N.J. Super. 518
STATE of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
Marc CORSO, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 2002.
Decided December 6, 2002.
*1131 Jessica A. Gomperts, Assistant Prosecutor argued the cause for appellant/cross-respondent *1132 (William H. Schmidt, Bergen County Prosecutor, attorney; Ms. Gomperts, of counsel, and on the brief).
John A. Young, Jr. argued the cause for respondent/cross-appellant (Willis and Young, attorneys; Mr. Young, on the brief).
Before Judges KESTIN, EICHEN[1] and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
Defendant, Marc Corso, a North Bergen police officer was charged along with Giovanni Gallo, with third degree distribution of a controlled dangerous substance (CDS) (Count 1), N.J.S.A. 2C: 35-5a(1), and 5b(13); third degree possession of a controlled dangerous substance (Count 2), N.J.S.A. 2C:35-10a(1); and second degree official misconduct (Count 3), N.J.S.A. 2C:30-2. Gallo pleaded guilty and testified for the State. After a jury trial, defendant was acquitted of the drug charges contained in counts one and two, but convicted of the official misconduct charged in count three.
After the denial of his motion for a new trial, defendant was sentenced to four years probation and 100 hours of community service. Appropriate penalties were imposed. Additionally, defendant was precluded from ever holding a law enforcement position.
Defendant appeals his conviction and the State cross-appeals the imposition of a probationary term for a second degree crime. N.J.S.A. 2C:44-1f(2). We affirm defendant's conviction and remand for imposition of a state prison term.
On April 15, 1999, Corso was at the Drama Night Club. That same night, undercover officers from the Bergen County Prosecutor's Office Narcotics Task Force were present at the club, hoping to purchase drugs as part of an investigation into reported narcotics distribution. Inside, a confidential informant introduced Investigator David Borzotta to Giovanni Gallo so that the officer, acting undercover, could purchase a controlled dangerous substance from him. The investigator asked Gallo if he "could purchase cocaine that evening." Gallo told Borzotta to "check back with him" in one half-hour.
One half-hour later, Gallo told Borzotta that he could not get him cocaine, but could acquire "Ecstacy" for him. The officer replied that he was interested in the Ecstacy, and ordered two pills. Gallo told Borzotta and the informant to wait in the men's room. The informant did so, but the investigator followed Gallo instead because Gallo had told him that he was going to get the drugs from his "man." Borzotta saw Gallo approach defendant, and observed them speak briefly. Gallo and defendant then proceeded toward the men's room. By the time they arrived at the men's room, Borzotta had returned there as well.
While Borzotta waited outside, Gallo and defendant went into the men's room and emerged "less than a minute" later, at which time Gallo handed the undercover officer the Ecstasy. Borzotta inquired as to the price for the drugs and was told by defendant and Gallo simultaneously that they were owed $50.00. After the investigator handed Gallo the money, Gallo and defendant exited the area. Borzotta observed Gallo exchange money with defendant, who then walked away from Gallo. *1133 Borzotta then identified defendant to his fellow officers, who placed defendant under arrest shortly thereafter.
Gallo testified for the State pursuant to his plea agreement. Gallo had known defendant for three years prior to the night they were arrested. They met each other through a "mutual friend" and socialized mostly by "hanging out" at the same clubs. Gallo worked at the Drama Night Club as a "door man" whose primary responsibility was allowing people to enter and exit the club. He testified that on April 15, 1999, at approximately 10:00 p.m., defendant approached him at the club and informed him that he had drugs that he wanted to sell and, "[i]f anybody needed them, let him know." Gallo knew that defendant was a police officer.
Later that night, when Borzotta and the confidential informant approached Gallo and inquired about the Ecstasy, Gallo told them to wait by the men's room while he retrieved the drugs for them to purchase. Gallo then approached defendant and told him "I need two pills of Ecstasy." Defendant then accompanied Gallo to the men's room for the transaction. Gallo took the pills from defendant and, accompanied by defendant, met the undercover officer and his confidential informant outside the bathroom. Defendant had told Gallo that each pill cost $25.00 and Gallo related that information to Borzotta. The investigator handed Gallo the money, Gallo handed the money to defendant and the two men went their separate ways.
Detective Sharon Malone of the Prosecutor's Task Force was also present at the Drama Night Club on the night defendant was arrested. She witnessed defendant's arrest at the club and then proceeded to the Fairview Police Department later that night and took custody of defendant for processing. Defendant had $171.00 in his pants pocket and explained to Detective Malone that "he just carried that much money around." Defendant had no drugs on his person but, as the detective explained, it was typical of drug dealers to keep their "stash" in another location so if they are intercepted by law enforcement, they have nothing on their person.
Defendant testified on his own behalf. He stated that the night he was arrested, he went to the Drama Night Club with a friend to have a drink. The Club was very crowded with a lot of people, loud music, and strobe lights. Defendant denied that either he or anyone he was with possessed any Ecstasy at any time that evening. Defendant knew Giovanni Gallo from encountering him at other clubs and saw him that night standing near the men's bathroom. Defendant approached Gallo to say hello, and Gallo asked defendant if he could make change for a fifty-dollar bill. Defendant then took cash from his pocket and gave Gallo two twenty dollar bills and one ten. In exchange, Gallo handed defendant a fifty-dollar bill.[2] Defendant claimed that he then left Gallo and went to the bar for more drinks. Defendant denied meeting Borzotta at the Drama Night Club and denied ever exchanging drugs for money or money for drugs. Defendant also explained that he had the other cash on his person when he was arrested because earlier that day he cashed his paycheck.

I
Defendant contends that a new trial is warranted because the court's instruction on official misconduct was erroneous. Specifically, defendant suggests error in a portion of the charge, inserted at the State's request, based upon State v. Hinds, *1134 143 N.J. 540, 674 A.2d 161 (1996). The charge, in pertinent part, was as follows:
Second, the State must prove that the defendant knowingly refrained from performing a duty which was imposed on him by law or was clearly inherent in the nature of his office. This provision refers to a public servant who knowingly refrains from performing an official, nondiscretionary duty which is imposed upon him by law or which is clearly inherent in the nature of his office.
The duty to act must be so clear that the public servant is on notice as to the standards that he must meet. In other words, the failure to act must be more than a failure to exhibit good judgment.
In addition, the State must prove that the defendant knew of the existence of his nondiscretionary duty to act prior to the incident therein.
While no special private law prescribes the duties of police officers, such duties are inherent or implicit in the nature of the office. The duties of a police officer include the mandate to arrest persons committing crimes observed by the officer.

[emphasis supplied.]
The final sentence is the portion at issue.
Defendant's contention is summed up in the following statement from his brief: "Hinds simply does not stand for the proposition that the Court, defense counsel and the prosecutor here believed it did, specifically, that a police officer has a non-discretionary duty to arrest someone whom he observes committing a crime." We disagree, at least in the circumstances presented here.
First, the issue now being argued was not presented to the trial court. The State had initially requested that the charge track Hinds by stating that a police officer has a duty to arrest persons committing crimes "within the officer's presence." Defense counsel objected to the "presence" language, particularly in the context of the events taking place in a crowded night club. The prosecutor then suggested the use of "observes" and defense counsel agreed to that formulation. There was never a suggestion that the charge violated or was not supported by Hinds. As a result, we view the matter as one requiring demonstration of plain error, which is error "clearly capable of producing an unjust result," R. 1:7-5, R. 2:10-2, such that a reasonable doubt is raised "as to whether the error led the jury to a result it otherwise might not have reached." State v. Brims, 168 N.J. 297, 306, 774 A.2d 441 (2001) (quoting State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971)).
On appeal, defendant argues that Hinds only stands for the proposition that an off-duty police officer does not have a non-discretionary duty to arrest an individual observed committing a crime, but only a duty to report it. Hinds was the security manager of a department store. Borsari was a police officer and longtime friend of Hinds. Borsari was stealing merchandise from the store with Hinds's assistance or acquiescence. Among other charges, Borsari was convicted of theft and official misconduct. The Appellate Division reversed the conviction finding, in part, that Borsari could not be found to have committed official misconduct on these facts. The Supreme Court reversed and reinstated the misconduct conviction. In order to address Hinds's arguments, the Court had to resolve whether Borsari could be guilty of official misconduct. The argument was that "a police officer who commits a crime unrelated to his office and while off duty does no more than commit the underlying crime." Hinds, supra, 143 N.J. at 547, 674 A.2d 161. The Court rejected that argument, finding that since Hinds was a thief, "Borsari undoubtedly had a duty to report Hinds's crime." Ibid. In support of *1135 that statement, the Court cited Robey v. Indiana, 484 N.E.2d 628 (Ind.Ct.App. 1985), and discussed the case as follows:
[T]he court held that a store security guard, appointed by the Sheriff as a deputy, who accepted money to forego the arrest and prosecution of a person who left the store with unpurchased merchandise was guilty of official misconduct. Reasoning that the duties of a police officer include the mandate to arrest persons committing a crime within the officer's presence, the court found it inconceivable that the officer would not be expected to apprehend shoplifters. [Robey] at 629. Hinds was essentially engaged in shoplifting. (The amounts involved take the case beyond the offense of shoplifting.)

[Id. at 548, 674 A.2d 161.]
The Court went on to say:
An off-duty police officer out of uniform and working as a security guard observing a crime "ha[s] the right and duty to arrest and detain a person who was violating a law." Tapp v. Indiana, 406 N.E.2d 296, 301 (Ind.Ct.App.1980) (quoting State v. Glover, 52 Ohio App.2d 35, 367 N.E.2d 1202, 1204 (1976)).

[Id. at 548-49, 674 A.2d 161.]
While defendant is correct in his contention that Hinds's holding is only that Borsari had a "duty to report" the crime of his accomplice, we cannot escape the conclusion that by its endorsement of Robey and Tapp, the Court sanctioned the proposition that an off-duty officer has a duty to arrest persons committing a crime in the officer's presence. In this case, recognizing the possible prejudice engendered by the use of the "presence" language, the court commendably modified and narrowed the language to crimes which the officer "observed" being committed. Thus, we find no error, much less plain error.
We note, in any event, that this language was not likely to have misdirected the jury's focus resulting in his conviction for merely being an innocent bystander. Although found not guilty of the drug counts, the charge still required the jury to find that defendant's failure to act was done to benefit himself or another, as required by the statute. N.J.S.A. 2C:30-2. As a result of the guilty verdict the jury must have found that defendant's actions were taken to benefit either himself or Gallo. In either event, he could not have been convicted simply because he saw a crime being committed. We do not know what motivated the jury to acquit defendant on the drug offenses, and it does not matter because even if the verdicts were seemingly inconsistent (which is not certain), we look only at the evidence supporting the guilty verdict without reference to the acquittal on the other counts. State v. Petties, 139 N.J. 310, 319, 654 A.2d 979 (1995) (citing United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L. Ed.2d 461, 470 (1984)).
There was no infirmity in defendant's official misconduct conviction based upon the jury instructions.

II
Nevertheless, defendant argues that the court erred in failing to grant his motion for judgment of acquittal made after the verdict. R. 3:18-2. Defendant contends that the evidence failed to establish a duty of immediate arrest or reporting in the circumstances. The trial judge rejected defendant's motion, stating that:
viewing the facts presented at trial in a light most favorable to the State and giving the State all favorable inferences, the following facts emerge: defendant was a police officer who participated in a drug transaction with a co-defendant who pled guilty. The drug transaction *1136 involved an undercover officer who identified defendant as being one of the individuals involved in the drug transaction. The undercover officer observed the defendant and co-defendant exchange money at the conclusion of the drug transaction. Based on those facts, it is apparent that defendant was aware of the drug transaction and he failed to fulfill his duty as a police officer by not taking appropriate action as required by N.J.S.A. 2C:30-2. Therefore, defendant's motion for a judgment of acquittal is denied.
We agree and likewise reject this argument.

III
Although official misconduct is a second degree crime, carrying a presumption of imprisonment, the judge sentenced defendant to a term of probation. N.J.S.A. 2C:44-1d provides that a term of imprisonment is presumed for a second (or first) degree offense "unless, having regard to the character and condition of the defendant, [the court] is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others." The presumption of incarceration leaves sentencing judges "a residuum of power" to withhold imprisonment only "in those few cases where it would be entirely inappropriate to do so." State v. Roth, 95 N.J. 334, 358, 471 A.2d 370 (1984). The standard for finding a "serious injustice," is "extremely narrow" and should only be applied when the circumstances are "truly extraordinary and unanticipated." State v. Jarbath, 114 N.J. 394, 407, 555 A.2d 559 (1989) (citing Roth, supra, 95 N.J. at 358, 471 A.2d 370). Such circumstances are "rarely found." Id. at 406-07, 471 A.2d 370. Absent "a proper determination that there would be such a serious injustice to the defendant, considering his character and condition, that it overrides the need to deter such conduct by others," the trial court must impose a custodial sentence. State v. Gerstofer, 191 N.J.Super. 542, 547, 468 A.2d 436 (App.Div.1983), certif. denied, 96 N.J. 310, 475 A.2d 599 (1984).
Here, the judge found the existence of only aggravating factor nine, the need to deter, N.J.S.A. 2C:44-1a(9). The judge found mitigating factors seven (no prior criminal record), eight (circumstances unlikely to recur), nine (unlikely to commit another offense), ten (will respond well to probation), and eleven (hardship), N.J.S.A. 2C:44-1b(7)-(11). The judge concluded that the "mitigating factors substantially and overwhelmingly outweigh the aggravating factor," and that "the interests of justice would best be served if defendant were not given a sentence of incarceration," implicitly finding that the interests of justice outweighed the need for deterrence.
We need not disagree with the judge's findings of aggravating or mitigating factors or with his weighing of them, to conclude that the sentence cannot stand.
The judge was undoubtedly sympathetic to defendant perhaps recognizing, although not explicitly stating, the peculiar hardships that might face a police officer within the prison system. Nevertheless, the requirements to overcome the statutory presumption are demanding and quite extraordinary. The presumption is not overcome simply because the mitigating factors greatly outweigh the aggravating. State v. Roth, supra, 95 N.J. at 358, 471 A.2d 370. Nor is the presumption overcome by the fact that defendant is a first-time offender, State v. Gonzalez, 223 N.J.Super. 377, 393, 538 A.2d 1261 (App. Div.), certif. denied, 111 N.J. 589, 546 A.2d 514 (1988), or by the fact that defendant has good prospects for rehabilitation, State v. Soricelli, 156 N.J. 525, 537-38, 722 A.2d 95 (1999); State v. Jabbour, 118 N.J. 1, 8, *1137 570 A.2d 391 (1990). Nor is it enough "that a defendant would find incarceration difficult [because] ... [d]efendants who commit serious crimes should expect to spend time in prison." Ibid. The few cases that have found extraordinary circumstances justifying overcoming the presumption of imprisonment are indeed "idiosyncratic" and readily distinguishable from the present case. See Jarbath, supra, 114 N.J. at 406-07, 555 A.2d 559; State v. E.R., 273 N.J.Super. 262, 641 A.2d 1072 (App.Div.1994).
In the end, we can only note that, regrettably, defendant brought the harsh weight of the law, which he was sworn to uphold, down upon himself. His tragedy rests only on his own shoulders. If our system of justice is to be and appear to be evenhanded, police officers convicted of serious crimes cannot be treated anymore indulgently than any other similarly situated individual. They are entitled to no more, and no less, than anyone else in their position.
While the trial judge's findings would certainly have justified sentencing defendant to a term one degree lower than the degree of conviction, N.J.S.A. 2C:44-1(f)(2), and possibly even at the low end of that range (we express no view as to what a proper sentence should be), they do not establish a basis for the "serious injustice" exception to the presumption of imprisonment. These were not "truly extraordinary and unanticipated circumstances." State v. Roth, supra, 95 N.J. at 358, 471 A.2d 370. The trial judge, although well-intentioned, erred in concluding otherwise. Id. at 363-64, 471 A.2d 370.
Judgment of conviction affirmed; sentence vacated and remanded for resentencing to a term of imprisonment.
NOTES
[1] Judge Eichen did not participate in the argument of this case. She has been added with consent of all counsel.
[2] According to Detective Malone, the $171 defendant had on his person consisted of a hundred-dollar bill, three twenty-dollar bills, one five-dollar bill and six one dollar bills. Defendant did not have a $50 bill on his person when he was arrested.