**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0483-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KYLE M. GRESAK,

    Defendant-Respondent.

_____

Submitted October 6, 2021 – Decided November 8, 2021

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Accusation No. 20-01-0013.

Esther Suarez, Hudson County Prosecutor, attorney for appellant (Erin M. Campbell, Assistant Prosecutor, on the brief).

McCarter and English, LLP, attorneys for defendant (Geoffrey N. Rosamond, of counsel and on the brief; Brian W. Carroll, on the brief).

PER CURIAM

The State appeals the sentence imposed on defendant's guilty plea conviction for unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f). The trial court sentenced defendant to a three-year term of probation and ordered defendant to serve 364 days in county jail as a condition of probation. The assault firearm offense to which defendant pled guilty falls under the mandatory sentencing provisions of the Graves Act,[1] N.J.S.A. 2C:43-6(c); the offense also is graded as a second-degree crime, thus invoking the presumption of imprisonment codified in N.J.S.A. 2C:44-1(d). That statutory presumption calls for a state prison sentence, not a county jail sentence as a condition of probation; the presumption can be overcome only when a state prison sentence would be a serious injustice that overrides the need to deter others.

In this instance, defendant brought an assault rifle to New Jersey from West Virginia, intending to exchange it for illicit drugs. The trial court's decision to spare defendant from a state prison sentence relies principally on sentencing factors pertaining to the offender, including defendant's lack of criminal history and willingness to address his drug dependence. The trial

---

[1] The Graves Act is named for Senator Francis X. Graves, Jr., who sponsored legislation in the 1980s mandating imprisonment and parole ineligibility terms for persons who committed certain offenses while armed with a firearm. The term now refers to all gun crimes that carry a mandatory minimum term of imprisonment. See infra note 3.

A-0483-20

court did not focus on the offense conduct and did not account for the compelling need to deter others from bringing out-of-state firearms into New Jersey to supply local drug dealers with assault weapons. After carefully reviewing the record in light of well-settled principles of law, we conclude that the trial court did not properly apply the standard for overcoming the strict presumption of imprisonment. Although we recognize why the trial court felt sympathy toward defendant, who has no prior convictions and is working earnestly to overcome his addiction, we are constrained to vacate the probationary sentence and remand for the trial court to impose a state prison sentence with a one-year period of parole ineligibility.

I.

We briefly summarize the pertinent facts and procedural history. In July 2019, a confidential informant notified the Hudson County Prosecutor's Office that defendant planned to exchange an assault rifle for a controlled dangerous substance—tetrahydrocannabinol (THC) Vapor Cartridges—in Weehawken, New Jersey. The informant claimed that defendant, a resident of West Virginia, made "semi-frequent trips" to New Jersey to purchase narcotics. On August 1, 2019, the informant notified law enforcement that defendant was en route to New Jersey and would be arriving between 11:00 p.m. and 1:00 a.m.

3

Based on that information, police identified and intercepted defendant's truck. Defendant consented to a search of the vehicle[2] and advised the police that an unloaded firearm was on the backseat. Police recovered an AR-15 assault rifle, a 32-round magazine, and ammunition. Defendant was charged with possession of an assault firearm, N.J.S.A. 2C:39-5(f), and possession of a large capacity magazine, N.J.S.A. 2C:39-3(j).

On January 10, 2020, defendant pled guilty to unlawful possession of an assault firearm in accordance with a negotiated agreement. The State agreed to dismiss the remaining charge and to move pursuant to N.J.S.A. 2C:43-6.2 for a partial waiver of the Graves Act mandatory forty-two-month term of parole ineligibility. The State agreed to recommend a five-year state prison term with a one-year period of parole ineligibility—commonly referred to as a "standardized" Graves Act plea offer. Defendant reserved the right to seek a full waiver of the mandatory minimum term of imprisonment.

At the sentencing hearing, defendant asked the court to impose non-custodial probation. The trial court declined to extend leniency to that degree, placing defendant on probation but ordering him to serve 364 days in the Hudson County jail as a condition of probation. The court rendered a lengthy

[2] The lawfulness of the stop, arrest, and consent search are not challenged in this appeal.

A-0483-20

written opinion, finding mitigating factors two, N.J.S.A. 2C:44-1(b)(2) ("[t]he defendant did not contemplate that the defendant's conduct would cause or threaten serious harm");[3] seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"); eight, N.J.S.A. 2C:44-1(b)(8) ("[t]he defendant's conduct was the result of circumstances unlikely to recur"); nine, N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"); ten, N.J.S.A. 2C:44-1(b)(10) ("[t]he defendant is particularly likely to respond affirmatively to probationary treatment"); and twelve, N.J.S.A. 2C:44-1(b)(12) ("[t]he willingness of the defendant to cooperate with law enforcement authorities"). The court found only one aggravating factor, nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). The court concluded that the mitigating factors substantially outweighed the aggravating factor.

---

[3]  Although we accord substantial deference to a trial court's finding of an aggravating or mitigating factor, we believe defendant's argument that he did not contemplate that trading an assault firearm to a drug dealer would cause or threaten serious harm is, at best, implausible, and at worst, disingenuous.

The court next determined that defendant's circumstances warranted a reduced sentence in the "interest of justice," relying in part on an Attorney General memorandum to county prosecutors. The Attorney General memorandum addresses cases involving out-of-state visitors who are arrested while in possession of firearms that were lawfully acquired and possessed in their home state. The trial court reasoned:

> Defendant "regrets his poor decision and accepts responsibility for his mistake." Defendant "understands the serious nature of the charges, which were motivated, in part, by [his] drug and alcohol dependency and desire to obtain controlled substances . . . ." The gun was found unloaded in the backseat of [d]efendant's [car], but he was not a "mastermind" or a "loyal follower" in furtherance of a crime as intended by our laws.
>
> [Pa 30.]

The trial court ultimately determined that these circumstances overcame the presumption of imprisonment. "Indeed," the trial court explained, "to not afford this out-of-state [d]efendant, who is taking active steps to address his drug dependency issues which [led] to this offense, the opportunity to continue to lead a productive and law-abiding life would constitute a serious injustice."

6

## II.

This appeal focuses on the need to deter persons from supplying out-of-state firearms to local drug traffickers, who may use those weapons in furtherance of their own criminal activity or else sell them unlawfully to others who may then use them to commit violent crimes. The unlawful importation of firearms is a matter of great public concern. Too often, a shooting tragedy is traced to a particular weapon that was brought into this state by unlawful means. We therefore lay the foundation for our review of defendant's probationary sentence by recounting the evolution and incremental strengthening of our criminal gun laws, which are designed to deter such conduct and are among the toughest in the nation. See Peter G. Verniero et al., The New Jersey SAFE Task Force on Gun Protection, Addiction, Mental Health and Families, and Education Safety 3 (April 10, 2013) ("New Jersey already has in place an extensive set of gun laws and regulations. Indeed, New Jersey's system for regulating firearms is widely considered to be among the most comprehensive and stringent in the nation.").

The Graves Act has long been a central feature of New Jersey's gun laws. "Enacted in 1981 as 'a direct response to a substantial increase in violent crime in New Jersey,' the Graves Act is intended 'to ensure incarceration for

those who arm themselves before going forth to commit crimes.'" State v. Nance, 228 N.J. 378, 390 (2017) (quoting State v. Des Marets, 92 N.J. 62, 68 (1983)). "Underlying this statute is a legislative intent to deter individuals from committing firearm-related crimes by calling for a mandatory minimum term of imprisonment for those convicted of Graves Act offenses." State v. Benjamin, 228 N.J. 358, 367 (2017) (quoting Des Marets, 92 N.J. at 71).

From the start, the Supreme Court took steps to ensure strict adherence to the mandatory minimum sentencing framework adopted by the Legislature. On April 27, 1981, Chief Justice Wilentz issued a memorandum "to ensure that mandatory prison terms pursuant to N.J.S.A. 2C:43-6(c), the Graves Act, were imposed in accordance with the Legislature's intent." Administrative Directive #09-18, "Guidelines for Downgrading/Dismissals Under the Graves Act: Strict Enforcement of Mandatory Minimum Custodial Terms for Offenses Involving Firearms" (July 2, 2018) (describing Administrative Directive #10-80, "Sentencing Guidelines for Dismissals Under the Graves Act" (April 27, 1981)) (AOC Directive #09-18). That memorandum remains in effect to this day.

In 1989, the Legislature enacted N.J.S.A. 2C:43-6.2 "[t]o mitigate the undue severity that might accompany the otherwise automatic application of

8

the mandatory minimum sentence under the Graves Act." Benjamin, 228 N.J. at 368. This statute authorizes "a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice." Ibid. Specifically, N.J.S.A. 2C:43-6.2 provides:

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under [the Graves Act] for a defendant who has not previously been convicted of [a Graves Act] offense . . . does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to [N.J.S.A. 2C:43–2(b)(2)] or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.

The relief afforded by N.J.S.A. 2C:43-6.2 arises in two ways. The prosecutor can make a motion to the assignment judge for a waiver of the mandatory minimum penalty. Alternatively, the sentencing judge may refer the matter to the assignment judge if the prosecutor approves the referral. In either procedure, the prosecutor must approve the waiver before the

assignment judge is authorized to impose one of the two reduced penalties. Benjamin, 228 N.J. at 368–69.

In 2007, the Legislature amended N.J.S.A. 2C:43-6(c), greatly expanding the reach of the Graves Act. See L. 2007, c. 341 (codified at N.J.S.A. 2C:43-6). Before this expansion, the Graves Act applied only when a person was convicted of possessing or using a firearm while in the course of committing certain predicate crimes or possessing a firearm for an unlawful purpose in violation of N.J.S.A. 2C:39-4(a). The expanded statute[4] imposes a Graves Act mandatory minimum sentence for anyone convicted of unlawful possession of a firearm, regardless of whether the defendant was concurrently

---

[4] The Graves Act now applies to a defendant who has been convicted of one of the following offenses: possession of a sawed-off shotgun or defaced firearm, N.J.S.A. 2C:39-3(b), (d); possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); possession of a firearm while in the course of committing a drug distribution/possession with intent to distribute crime or bias crime, N.J.S.A. 2C:39-4.1(a); unlawful possession of a machine gun, handgun, rifle or shotgun, or assault firearm, N.J.S.A. 2C:39-5(a), (b), (c), (f); certain persons not to have weapons, N.J.S.A. 2C:39-7(a), (b)(2), (b)(3); and manufacture, transport, disposition and defacement of machine guns, sawed-off shotguns, defaced firearms, or assault firearms, N.J.S.A. 2C:39-9(a), (b), (e), (g). N.J.S.A. 2C:43-6(c).
The Graves Act also applies to a defendant who "used or was in possession of a firearm" while in the course of committing, attempting to commit, or fleeing from the following crimes: murder, N.J.S.A. 2C:11-3; manslaughter, N.J.S.A. 2C:11-4; aggravated assault, N.J.S.A. 2C:12-1(b); kidnapping, N.J.S.A. 2C:13-1; aggravated sexual assault, N.J.S.A. 2C:14-2(a); aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a); robbery, N.J.S.A. 2C:15-1; burglary, N.J.S.A. 2C:18-2; and escape, N.J.S.A. 2C:29-5. N.J.S.A. 2C:43-6(c).

committing another crime or had a purpose to use the firearm unlawfully. Importantly for purposes of this appeal, the "simple" unlawful possession offense in N.J.S.A. 2C:39-5 was not only added to the Graves Act list, but also was upgraded from a third-degree crime to a second-degree crime. Prior to this revision, most persons charged with simple possession of a firearm—the most commonly charged gun offense—were entitled upon conviction to a presumption of non-incarceration, i.e., probation, pursuant to N.J.S.A. 2C:44-1(e). Under the revised statute, those persons are now subject to both the mandatory minimum sentencing provisions of the Graves Act and the presumption of imprisonment that applies to second-degree convictions pursuant to N.J.S.A. 2C:44-1(d). In addition to expanding the scope of the Graves Act by significantly increasing the number of gun offenders subject to a mandatory minimum sentence, the 2007 amendment increased the mandatory minimum term of parole ineligibility from three years to forty-two months. L. 2007, c. 341, § 5.

The significant expansion of the Graves Act prompted the Attorney General to issue a statewide directive to police and prosecutors in October 2008. Attorney General, Attorney General Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008)

11

(2008 Attorney General Directive).  The 2008 Attorney General Directive was issued "[t]o ensure statewide uniformity in the enforcement of the Graves Act, and to provide reasonable incentives for guilty defendants to accept responsibility by pleading guilty in a timely manner so as to maximize deterrence by ensuring the swift imposition of punishment."  2008 Attorney General Directive at 4.  Recognizing the trial court system might be overwhelmed unless the significantly expanded number of Graves Act offenders were provided an incentive to waive their right to a jury trial by pleading guilty, the 2008 Attorney General Directive instructs prosecutors to tender a "standardized" plea offer that invokes N.J.S.A. 2C:43-6.2 to reduce the term of parole ineligibility to one year.  Id. at 13.  That standardized offer must be tendered "unless the prosecuting agency determines that the aggravating factors applicable to the offense conduct and offender outweigh any applicable mitigating circumstances," or "unless the prosecuting agency determines that a sentence reduction to a one-year term of parole ineligibility would undermine the investigation or prosecution of another."  Ibid.

The 2008 Attorney General Directive also instructs prosecutors on when and in what circumstances they may tender plea offers that contemplate a probationary term.  Specifically,

12

> [a] prosecuting agency shall not move for or approve a sentence of probation except for extraordinary and compelling reasons that take the case outside the heartland of the legislative policy to deter unauthorized gun possession…so that imposition of a state prison term would constitute a serious injustice that overrides the need to deter others from unlawfully possessing a firearm.
>
> [Id. at 12–13.]

This formulation draws closely from the presumption of imprisonment set forth in N.J.S.A. 2C:44-1(d), which we discuss in section III of this opinion. The 2008 Attorney General Directive further provides that if

> a court waives or reduces a mandatory minimum term without the prosecutor's approval, or if the prosecuting agency applies for or approves a reduction to a one-year term of parole ineligibility and the court imposes a probationary term, the prosecuting agency shall immediately notify the Director of the Division of Criminal Justice, shall seek a stay of the sentence, and shall appeal the sentence.
>
> [Id. at 15.]

In response to public attention on how prosecutors exercise discretion in situations involving out-of-state visitors who possess lawfully acquired firearms in New Jersey, the Attorney General issued a clarification to the 2008 Attorney General Directive in 2014. Attorney General, Clarification of the "Graves Act" 2008 Directive with Respect to Offenses Committed by Out-of-

13

State Visitors From States Where Their Gun-Possession Conduct Would Have Been Lawful 1 (Sep. 24, 2014) (2014 Attorney General Clarification or Attorney General memorandum). The 2014 Attorney General Clarification notes that in most cases involving out-of-state visitors who would be in lawful possession of the firearm in their home jurisdiction, "imprisonment is neither necessary nor appropriate to serve the interests of justice and protect the public safety." Ibid. Rather, in cases where the prosecutor does not find pretrial intervention (PTI) appropriate, the 2014 Attorney General Clarification "establishes a rebuttable presumption that the prosecutor will tender an initial plea offer that authorizes the court upon conviction to impose a non-custodial probationary sentence." Ibid.

Not all out-of-state defendants, however, fall within the scope of the 2014 Attorney General Clarification. The Attorney General memorandum is meant to address those situations where the out-of-state visitor "inadvertently" violates New Jersey law. Ibid. Furthermore, the 2014 Attorney General Clarification applies only to individuals who (1) lawfully acquired the firearm in another jurisdiction, (2) live in a jurisdiction where the firearm would be lawful, and (3) believed that possession of said firearm was legal in New Jersey. Id. at 4. We add that while the 2014 Attorney General Clarification

14

may be instructive for resolving issues involving out-of-state visitors who possess a firearm while in New Jersey, it "is simply a statement of the current policy of the Attorney General." State v. Waters, 439 N.J. Super 215, 238–39 (App. Div. 2015) (noting that the "validity of a trial court's order regarding PTI must be determined based on applicable law, not subsequent changes in prosecutorial policy"). The 2014 Attorney General Clarification does not alter the legal standard for overcoming the presumption of imprisonment established in N.J.S.A. 2C:44-1(d).

## III.

The Graves Act does not operate in isolation from other sentencing provisions of the New Jersey Code of Criminal Justice (the Code), N.J.S.A. 2C:1-1 to 104-9. That leads us to discuss the basic sentencing principles that govern this appeal, including the scope of our review. A trial court's sentencing determination is entitled to deference. State v. Fuentes, 217 N.J. 57, 70 (2014). "A reviewing court may not substitute its own judgement for that of the sentencing court. Judges who exercise discretion and comply with the principles of sentencing remain free from the fear of 'second guessing.'" State v. Megargel, 143 N.J. 484, 493–94 (1996); see also State v. Jarbath, 114

15

N.J. 394, 401 (1989) (holding "[t]he critical focus" is whether the sentencing court was "clearly mistaken"). Accordingly,

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

The critical question raised in this appeal is whether the trial court violated sentencing guidelines, and specifically, whether the trial court correctly applied the presumption of imprisonment codified in N.J.S.A. 2C:44-1(d). That sentencing feature provides:

> The court shall deal with a person who has been convicted of a crime of the first or second degree . . . by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that the defendant's imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

As we have noted, the Graves Act offense for which defendant was convicted, unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f), is graded as a second-degree crime. Accordingly, that conviction is subject to

16

the presumption of imprisonment. Moreover, the New Jersey Supreme Court recently confirmed that the presumption of imprisonment applies in situations where a prosecutor moves for a Graves Act waiver pursuant to N.J.S.A. 2C:43-6.2. State v. Nance, 228 N.J. 378, 395–96 (2017). The Court in Nance held that nothing in N.J.S.A. 2C:43-6.2 or N.J.S.A. 2C:44-1(d) "suggests that a Graves Act waiver exempts a defendant convicted of first[-] or second-degree offense from the presumption of incarceration." Id. at 396.

The law also is well-settled that the presumption of imprisonment is not satisfied by a term of incarceration imposed as a condition of probation, which is sometimes referred to as a "split sentence." In State v. O'Connor, our Supreme Court explained that a split sentence is a "form of punishment qualitatively as well as quantitatively different from a term of imprisonment." 105 N.J. 399, 409 (1987). The Court concluded, "[w]e therefore hold that a split sentence is invalid where the defendant has committed a second-degree offense, except in cases where the presumption of imprisonment has been overcome." Id. at 410. Accordingly, a defendant convicted of a second-degree gun crime who is granted a Graves Act waiver pursuant to N.J.S.A. 2C:43-6.2 may not be sentenced to probation under that provision unless the court finds

that a sentence to state prison would constitute a serious injustice that overrides the need to deter others.

Reviewing courts have rarely found justification to overcome the presumption of imprisonment.  See Jarbath, 114 N.J. at 407.  In determining whether the presumption has been overcome, the focus is not on the offender but rather on the "gravity of the offense, which implicates the need for specific and general deterrence."  State v. Evers, 175 N.J. 355, 392 (2003).  In Evers, the Court noted that in the context of first- and second-degree crimes, there is an "overwhelming presumption that deterrence will be of value."  Id. at 395.

Furthermore, our Supreme Court has stressed repeatedly that the presumption of imprisonment can only be overcome "in truly extraordinary and unanticipated circumstances."  State v. Jabbour, 118 N.J. 1, 7 (1990) (quoting State v. Roth, 95 N.J. 334, 358 (1984)); see also State v. Nwobu, 139 N.J. 236, 252 (1995) (quoting Jabbour, 118 N.J. at 7) ("To forestall imprisonment a defendant must demonstrate something extraordinary or unusual, something 'idiosyncratic,' in his or her background.").

The law is well-settled that a defendant does not overcome the presumption of imprisonment simply because he or she has led "a crime-free or blameless life" or happens to be a "first-time offender."  Evers, 175 N.J. at

18

388, 400. Nor is the presumption overcome by drug or alcohol dependency that triggers criminal behavior. See Roth, 95 N.J. at 368–69 (noting that "[i]t is unfortunate, but not exceptional, that [the defendant's] youthful dependence on drugs and alcohol triggered his criminal behavior. Many crimes arise out of drug and alcohol use. [The defendant's] situation, while regrettable, is not rare."); see also Jarbath, 114 N.J. at 407 (noting "[i]t is, nevertheless, clear under the Code that rehabilitation is not the goal to be achieved by a consideration of the character and condition of the offender [for purposes of applying the serious injustice standard under N.J.S.A. 2C:44-1(d)]") (citing Roth, 95 N.J. at 367).

The high bar set for overcoming the presumption of imprisonment is shown in State v. Corso, 355 N.J. Super. 518 (App. Div. 2002). Because the error committed by the sentencing court in that case is in many respects similar to the error committed in the case before us, we deem it appropriate to quote extensively from our opinion in Corso. There, we explained:

> The standard for finding a serious injustice, is extremely narrow and should only be applied when the circumstances are truly extraordinary and unanticipated. Such circumstances are rarely found." Absent a proper determination that there would be such a serious injustice to the defendant, considering his character and condition, that it overrides the need

19

to deter such conduct by others, the trial court must impose a custodial sentence.

Here, the judge found the existence of only aggravating factor nine, the need to deter, N.J.S.A. 2C:44-1a(9). The judge found mitigating factors seven (no prior criminal record), eight (circumstances unlikely to recur), nine (unlikely to commit another offense), ten (will respond well to probation), and eleven (hardship), N.J.S.A. 2C:44-1b(7)-(11). The judge concluded that the mitigating factors substantially and overwhelmingly outweigh the aggravating factor, and that the interests of justice would best be served if defendant were not given a sentence of incarceration, implicitly finding that the interests of justice outweighed the need for deterrence. We need not disagree with the judge's findings of aggravating or mitigating factors or with his weighing of them, to conclude that the sentence cannot stand. The judge was undoubtedly sympathetic to defendant perhaps recognizing, although not explicitly stating, the peculiar hardships that might face a police officer within the prison system. Nevertheless, the requirements to overcome the statutory presumption are demanding and quite extraordinary. The presumption is not overcome simply because the mitigating factors greatly outweigh the aggravating. Nor is the presumption overcome by the fact that defendant is a first-time offender, or by the fact that defendant has good prospects for rehabilitation. Nor is it enough that a defendant would find incarceration difficult [because] . . . [d]efendants who commit serious crimes should expect to spend time in prison. The few cases that have found extraordinary circumstances justifying overcoming the presumption of imprisonment are indeed idiosyncratic and readily distinguishable from the present case.

20

In the end, we can only note that, regrettably, defendant brought the harsh weight of the law, which he was sworn to uphold, down upon himself. His tragedy rests only on his own shoulders.

[Id. at 528–29 (internal quotations and citations omitted).]

Nothing in the record before us suggests that defendant's situation is extraordinary or even unusual. Like far too many individuals, defendant was driven by addiction to resort to criminal activity to support his drug habit.

Furthermore, in deciding to afford leniency beyond that contemplated in the plea agreement, as in Corso, the sentencing court appears to have conflated the standard for overcoming the presumption of imprisonment with the distinct standard for downgrading a sentence under N.J.S.A. 2C:44-1(f)(2). That provision of the Code authorizes a court to extend leniency by sentencing a "defendant to a term [of imprisonment] appropriate to a crime of one degree lower than that of the crime for which the defendant was [actually] convicted." The downgrade feature of N.J.S.A. 2C:44-1(f)(2) may be invoked when "the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands."[5]

---

[5] We note that the five-year term imposed on defendant's second-degree conviction is at the bottom of the second-degree range of authorized sentences,

In Evers, the Court made clear that "[t]he standard for overcoming the presumption of imprisonment is distinct from that for downgrading an offense [pursuant to N.J.S.A. 2C:44-1(f)(2)]. Moreover, the reasons offered to dispel the presumption of imprisonment must be even more compelling than those that might warrant downgrading an offense." 175 N.J. at 389 (citing State v. Megargel, 143 N.J. 484, 498–502 (1996)); see also Corso, 355 N.J. at 529 (finding that justification for a reduced sentence did not overcome the presumption of imprisonment).

In this instance, although the trial court found aggravating factor nine applicable, N.J.S.A. 2C:44-1(a)(d) ("the need for deterring defendant and others from violating the law"), it did not adequately focus on the need to deter others from engaging in the same criminal conduct defendant committed. It bears repeating that defendant imported an operable assault firearm into this state with the intention to provide it to a person he knew was engaged in criminal drug distribution. Defendant, in other words, introduced an assault firearm to this state intending to place it in the stream of illicit gun commerce, making him, in practical effect, a one-time gun runner. Given the alarming prevalence of gun violence associated with the illicit drug trade, the act of

_____

N.J.S.A. 2C:43-6(a)(2), which is also the top of the third-degree range, N.J.S.A. 2C:43-6(a)(3).

supplying arms to drug distributers cries out for the need for general deterrence.

The compelling public safety interest in deterring the importation of assault weapons in these circumstances was not overridden by the trial court's findings that defendant now regrets his decision, belatedly appreciates the serious nature of the charges, and accepted responsibility for his actions by pleading guilty. Nor is the need to deter others from engaging in such inherently dangerous conduct overridden by the fact that defendant "was not a 'mastermind' or 'loyal follower' in furtherance of a crime as intended by our laws." Contrary to the trial court's implicit suggestion, both the Graves Act and presumption of imprisonment apply without regard to whether a defendant is a criminal "mastermind," criminal gang member, or repeat offender.[6] To the

---

[6] We are not familiar with the phrase "loyal follower in furtherance of a crime" as used by the trial court. Presumably, the court was referring to the fact that defendant does not have a criminal record and does not appear to have been involved in the criminal milieu. We note that the reduction of the mandatory 42-month parole ineligibility term authorized under N.J.S.A. 2C:43-6.2 already accounts for the fact that a defendant is a first-time offender. See Benjamin, 228 N.J. at 368 (noting the statute authorizes a "limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice"). A defendant who has previously been convicted of a Graves Act offense, for example, is not eligible for the exception to the mandatory minimum sentence. Relatedly, the offense of possession of a firearm by a certain person, that is, a person previously convicted of certain designated

extent the mitigating circumstances found by the trial court justify leniency, such leniency is amply accounted for by the reduction, pursuant to N.J.S.A. 2C:43-6.2, of the three-and-one-half-year period of parole ineligibility otherwise mandated by the Graves Act.

We add that the trial court's reliance upon the 2014 Attorney General Clarification is misplaced. As we have already noted, the Attorney General memorandum "is simply a statement of the current policy of the Attorney General," and does not change the legal standard for overcoming the presumption of imprisonment. See Waters, 439 N.J. Super. at 238–39. And in any event, the trial court appears to have misinterpreted and grossly overextended the Attorney General memorandum, which address situations where an out-of-state gun owner "inadvertently" violates New Jersey law. 2014 Attorney General Clarification at 1. Defendant, it bears emphasis, was not simply passing through New Jersey with the assault firearm in his possession when he was fortuitously stopped by police. Rather, his plan was to trade the weapon for a controlled substance in this state, leaving the weapon

---

crimes, N.J.S.A. 2C:39-7, is not eligible for the exception authorized in N.J.S.A. 2C:43-6.2, which applies only to mandatory minimum terms imposed pursuant to N.J.S.A. 2C:43-6(c). The certain persons offense carries its own mandatory minimum sentence that is not subject to reduction under N.J.S.A. 2C:43-6.2.

here in the custody of a drug dealer. Nor is this a situation as contemplated in the 2014 Attorney General Clarification where an out-of-state visitor was complying with the law of his or her state. It strains credulity to suggest that defendant honestly believed that it would be legal in his home state to trade a firearm for drugs. The point, simply, is that while defendant may have lawfully acquired the weapon, his planned disposition of it cannot be characterized as an inadvertent violation of New Jersey law. We reiterate, moreover, that while defendant may not be a "criminal mastermind" or "loyal follower in furtherance of a crime," to use the trial court's phraseology, his conduct without question posed a threat to the safety of New Jersey residents and must not be repeated by others.

In sum, the need to deter the arming of drug dealers is self-evident and profound. We deem it inconceivable that the hardships that defendant and his family will experience from his incarceration in state prison overrides the need to deter others from importing an assault firearm into New Jersey to trade for drugs.

We note, finally, that under the Graves Act sentencing framework, there are only three authorized sentencing options for a defendant convicted of unlawful possession of a firearm under N.J.S.A. 2C:39-5: (1) a state prison

term with a forty-two-month period of parole ineligibility; (2) a state prison term with a one-year period of parole ineligibility; or (3) probation, which may include a county jail term. The first option, of course, is precluded by defendant's plea agreement and the prosecutor's motion pursuant to N.J.S.A. 2C:43-6.2. The third option is precluded based upon our conclusion that the circumstances in this case do not meet the high standard for overcoming the presumption of imprisonment. Accordingly, we remand the matter and instruct the trial court to impose a state prison term with a one-year period of parole ineligibility.

We do not preclude the court from considering on remand whether to reduce the overall state prison term pursuant to N.J.S.A. 2C:44-1(f)(2). Cf. Corso, 355 N.J. Super. at 529 (remarking, that "the trial judge's findings would certainly have justified sentencing defendant to a term one degree lower than the degree of conviction, N.J.S.A. 2C:44-1(f)(2), and possibly even at the low end of that range (we express no view as to what a proper sentence should be).). We express no opinion on whether a sentence downgrade would be appropriate other than to say that defendant should not be denied the opportunity to seek a downgrade sentence under N.J.S.A. 2C:44-1(f)(2) by reason of the trial court's mistaken decision to go beyond that form of leniency

and impose a probationary sentence. Unless the State consents to a sentence downgrade, the court shall convene a resentencing hearing at which the prosecutor is afforded an opportunity to argue its opposition to an overall state prison term within the third-degree range of sentences, e.g., three or four years. See supra note 6. We reiterate that the sentence that is imposed on remand must be to a state prison term and must include a one-year period of parole ineligibility. We do not retain jurisdiction.

Sentence vacated and remanded for resentencing.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0483-20